WALTER H. LIEBMANN, Plaintiff, *v.* FREDERICK ALDHOUS et al., Defendants.

(Municipal Court of City of New York, Trial Term, January, 1919.)

Lease — covenants contained in — what does not constitute a violation — landlord and tenant — when counterclaim dismissed — actions — meaning of word " violations."

> Tenants of a building in the city of New York, with knowledge that the building was not and could not be in proper condition until made to comply with the requirements of the tenement house department, covenanted in the lease to put the building in proper condition at their own cost and expense and comply with all requirements of law or ordinance and all requirements of any municipal, state, federal or other authority or department. The day before the lease was executed an inspector of the tenement house department in due course of procedure and without the knowledge of the parties to the lease, inspected the premises, made his report the next day, and two days after the lease was executed the department mailed to the owner of the premises a notice of violations and an order directing their removal. In an action for rent, *held*, that a counterclaim for the cost and expense of defendants in complying with said order should be dismissed upon the merits and the plaintiff given judgment.
>
> In a provision of the lease that the landlord should " comply with any and all violations existing against said premises at the time of the execution of this lease " the word " violations " means a violation of which notice has been given by the department charged with the enforcement of the particular provision of law or ordinance involved, and the notice of violations and order for their removal, in the present case, did not constitute a violation existing against the premises at the making of the lease.

ACTION to recover rent.

David Barnett, for plaintiff.

Hiram O. Hance, for defendants.

GENUNG, J.   The action was brought to recover rent due for the month of November, 1918, amounting to $137.50 for the premises known as number 305 East One Hundred and Ninth street, borough of Manhattan, pursuant to a lease in writing, dated August 6, 1918. The answer of the defendants admits all the allegations of the complaint, but sets up for a further and separate distinct defense and by way of counterclaim that at the special instance and request of the plaintiff the defendants between the 6th day of August, 1918, and the 30th day of November, 1918, performed certain work, labor and services of the reasonable worth and value of $546, which the plaintiff promised and agreed to pay, that no part of said sum has been paid although duly demanded, and demands judgment for the sum of $408.50, with costs, and that the complaint be dismissed.

The lease, which was executed on August 6, 1918, contains the following provision:

" *Fourth.*   That the tenants shall, at their own cost and expense, promptly execute, perform and comply with and discharge all requirements of law or ordinance and all orders or notices, rules, regulations or requirements of every nature and kind whatsoever of any municipal, state, federal or other authority or department, or of the New York Board of Fire Underwriters or other similar body, whether ordinary or extraordinary, and by virtue of or by reason of any present or future law, ordinance or authority whatsoever.   It being understood, however, that the landlord shall comply with any and all violations existing against said premises at the time of the execution of this lease."

On August 1, 1918, as a preparation for closing, the landlord wrote to the tenement house department asking whether or not there were any violations on record

Municipal Court of New York, January, 1919.   [Vol. 105.

in that department against the said premises.   The
letter was received by the tenement house department
on August 2, 1918, at which date there were no viola-
tions on record in that department against the said
premises.   On August 5, 1918, in accordance with the
procedure of the tenement house department and with-
out the knowledge of any of the parties hereto, an
inspector of the tenement house department made an
inspection of the premises.   On August 6, 1918, the
date when the lease was executed and delivered, the
inspector made his report to the tenement house
department.   On August 8, 1918, two days after the
lease was executed and delivered, the tenement house
department mailed a notice of violations and an order
directing their removal to the record owner of the
premises.

The lease contains the following provision:

" *Third*.   That the tenants shall take good care of
the premises and shall, at their own expense, make all
repairs necessary to put the building in proper con-
dition and shall keep and maintain the said premises
in good and sufficient repair and condition and shall
instal a new hot water heating plant, paint the entire
premises and make any and all necessary repairs,
extraordinary as well as ordinary, both interior and
exterior, in and about said premises, excepting the
sidewalk in front of said premises and roof.   All such
repairs are to be equal to the original in class and
quality of the building and the tenants shall, at the end
or other expiration of the term, deliver up the demised
premises in good order or condition."

In the absence of any covenant, the lessor is under
no obligation to repair the demised premises.   *Rheims*
v. *Dolley,* 93 Misc. Rep. 500; *Silverman* v. *Isaac,* 183
App. Div. 542.   A lessee assumes all the risks arising
from the condition of the premises, unless there is an

express agreement on the part of the lessor in relation thereto, and an express covenant will not be enlarged by construction. *Richmond* v. *Lee,* 123 App. Div. 279; *Witty* v. *Matthews,* 52 N. Y. 512; *Watson* v. *Almirall,* 61 App. Div. 429; *Franklin* v. *Brown,* 118 N. Y. 110. The defendants knew that the premises were not in proper condition. They covenanted to put the building in proper condition. The building could not be in proper condition until it was made to comply with the requirements of the tenement house department. The defendants could have required an inspection by the tenement house department and a report thereon as to any and all violations against said premises at the time of the execution of the lease. Having covenanted to put the building in proper condition and to comply with all violations existing against said premises after the execution of the lease, they assumed all risk and responsibility for the condition of said premises thereafter. *Richmond* v. *Lee,* 123 App. Div. 279; *Harder Realty & Construction Co.* v. *Lee,* 74 Misc. Rep. 436; *Deutsch* v. *Hoe Estate Co., Inc.,* 174 App. Div. 685.

A similar question was presented in the case of *Goldinger* v. *Baumann,* 176 App. Div. 166. In that case a contract was made for the sale of real property and the vendor covenanted to " convey the said premises free and clear from any violations or complaints filed or existing in any Municipal Departments of the City of New York, and affecting said premises." The title was to close on January 19, 1915. On January 4, 1915, an inspector of the tenement house department made an inspection of the premises and on the same day filed his report on the condition of the premises. On January 19, 1915, the vendee refused to accept the title and claimed a breach of the aforesaid covenant to convey a free and clear title. On January 23, 1915, the statutory notice of violations and order for the removal

thereof was issued to the owner. In an action to recover the deposit of $500 and the expense of $50 in searching the title, brought by the vendee, the complaint was dismissed, the court at Special Term, Kings county, Blackmar, J., holding " there was no ' violations or complaints ' affecting the premises, nor any ' requirements of the commissioner of the Tenement House Department,' existing on January 19, 1915." On appeal to the Appellate Division, the judgment was reversed (176 App. Div. 166), the court holding, Putnam, J.: " The contract provided not only against ' violations,' which did not legally exist before an order for their removal, but also against the antecedent steps starting with a 'complaint,' leading up to such an order. This inspector's report to the chief inspector, filed on January fourth and sent to the bureau of records January eighteenth, was a ' complaint ' within this contract. Otherwise, what could the parties have intended by the expression, ' complaints filed or existing? ' The case below seems to have turned on the time when there was a ' violation.' Such a complaint was a menace to the buyer if it went on and ripened into a violation. Here a clear violation resulted, which, if not removed, might be followed by a suit for penalties, with a judgment which would become a lien on the premises."

There is a difference between the wording of the covenant in the contract of sale in that case and the wording of the covenant in the lease in this case. In the covenant of the lease there is no reference to " complaints." The landlord herein covenanted to " comply with any and all violations existing against said premises at the time of the execution of this lease." The defendants covenanted to " at their own cost and expense, promptly execute, perform and comply with and discharge all requirements of law or ordi-

nance and all orders or notices, rules, regulations or requirements of every nature and kind whatsoever of any municipal, state, federal or other authority or department." The word " violations " in common real estate parlance, has a well defined meaning, of which the Court can take judicial notice. The Court can take judicial notice of the meaning of words or of any well known fact. *Simpson* v. *Press Publishing Co.,* 33 Misc. Rep. 228; *Damm* v. *Kohn,* 98 id. 648. The term " violations " when employed as in the case at bar, is almost universally used and accepted as meaning a violation of which notice has been given by the respective department charged with the enforcement of the particular provisions of law or ordinance involved. The notice of violations and order for their removal, mailed by the tenement house department on August 8, 1918, following a report by an inspector made on August 6, 1918, affecting the said premises, did not constitute a violation existing against said premises at the time of the execution of this lease.

The plaintiff, therefore, is entitled to recover judgment against the defendants in the sum of $137.50 and to a dismissal of the counterclaim on the merits.

Judgment accordingly.