Friedman-White Realty Co., Inc., Landlord, *v.* The Garage Development Corporation and Magrak Garage Co., Inc., Tenants.

John Doe and Richard Roe, Undertenants.

Municipal Court of New York, Borough of Manhattan, Seventh District, August 31, 1927.

**Landlord and tenant — eviction — action for rent — building is garage with one hundred and twenty-five automobile capacity — actual eviction as to space for six or eight cars would be defense — eviction is based on leaky roof — constructive eviction not shown.**

This is an action to recover rent of a two-story garage which has a capacity of one hundred and twenty-five automobiles. The defendant has interposed the defense of eviction based on the fact that the roof leaked to such an extent as to deprive it of the use of space for the storage of six or eight automobiles. If the defendant were actually evicted of the space mentioned, that eviction would be a good defense to this action.

However, the defendant must rely on constructive eviction arising from the leaky condition of the roof. In view of the fact that the landlord was not under any obligation to repair the roof, the defendant has not shown a constructive eviction, and, therefore, its defense is not good.

Action for non-payment of rent.

*Shapiro Bros.* [*W. E. Goldman* of counsel], for the landlord.

*Bijur, Herts & Steinberg* [*Harry Bijur* of counsel], for tenant Magrak Garage Co., Inc.

---

* Added by Laws of 1922, chap. 672; renumbered 442-f by Laws of 1926, chap. 831.— [Rep.

PRINCE, J.   The proceeding is for non-payment of rent for March and April, 1927, of a two-story garage under a written lease.   The tenant continuing in possession, pleads eviction as a defense.   A prior final order for the landlord was reversed by the Appellate Term for the erroneous exclusion of evidence.   The demised premises consist of a two-story garage with floor space for approximately 125 cars.

Resolving the facts most favorably to the tenant, they are that, by reason of a defective condition of the roof, rain leaked through the ceiling on the upper floor and upon certain automobiles stored therein.   As a result, the tenant was deprived of the use of space for between six and eight automobiles immediately underneath the leaky spots.

Upon this evidence I am asked to hold the tenant freed from liability for rent, on the theory of an actual partial eviction of the tenant from portions of the premises thus rendered unusable.   It is pertinent at the outset to dispose of a mooted question of law, that is, whether the deprivation of the use of space for six to eight automobiles in a garage accommodating 125, is so substantial as to warrant the application of the rule of suspension of rent during an actual eviction, assuming the evidence presents such a situation. The theory of actual partial eviction which relieves a tenant from the payment of rent, notwithstanding his continuance in possession of the demised premises, is that a landlord who has wrongfully deprived a tenant of a part of that which he has demised, will not be permitted to apportion his wrong, and will be denied the consideration for the hiring so long as his intrusion continues.   In my judgment an actual ouster by a landlord of a tenant from the space of six automobiles, regardless of the size of the garage, would constitute a good defense in a proceeding for non-payment of rent.

There remains to be considered whether the defense of actual partial eviction has been made out.   The law recognizes two kinds of eviction, actual and constructive.   An actual eviction does not arise from mere untenantability.   It is predicated upon the " arbitrary and willful interference with the tenant's right " of possession, ingress or egress by the landlord or by title paramount.   (See *Davies, Turner & Co.* v. *Schatzen,* 124 Misc. 170; *Edgerton* v. *Page,* 20 N. Y. 281; *Huber* v. *Ryan,* 26 Misc. 428.)

Mr. Justice GAYNOR, with his usual clarity, says in the last-mentioned case: " There must be a forcible ouster of the tenant, or such an unlawful interference with his beneficial use of the demised premises as amounts to a permanent substantial impairment of it. Mere breach of covenant to repair, improve or rebuild is no eviction."

When there is an actual eviction, the landlord forfeits his right to rent so long as it continues, regardless of whether or no the tenant vacates, save that when it is by title paramount, without fault on the part of the landlord himself, there is an apportionment. (*Fifth Ave. Building Co.* v. *Kernochan,* 221 N. Y. 370.)

In the case at bar there is no claim of willful, arbitrary or even affirmative act on the part of the landlord. At most, the untenantability arises from its alleged non-feasance.

Furthermore, it is indeed doubtful whether even a case of constructive eviction is made out, which would have entitled the tenant to abandon the premises and rescind the lease. The basis of such a defense is a duty on the part of the landlord, a failure of performance and resulting untenantability. The lease distinctly casts the onus of complying with all the requirements of Federal, State and municipal departments upon the tenant, save the obligation prior to the commencement of the term to secure a permit for the occupancy of the premises as a garage. Besides, the tenant expressly agrees (in paragraph sixth), at its own cost and expense " to make all repairs to the demised premises, and such repairs shall mean to the exterior as well as the interior, sidewalk and every part of the said premises, excepting the roof." In the absence of express agreement or statutory imposition, the landlord does not warrant that the premises are fit for the purposes for which they are let. (*Scheffler Press* v. *Perlman,* 130 App. Div. 576.)

It needs no citation of authorities that in the absence of a contract or statute, a landlord is under no obligation to repair. The provision exempting the tenant from the obligation to repair the roof does not cast the burden of such repair upon the landlord. (See *Schiavone* v. *Callahan,* 52 Misc. 654; *Zelzer* v. *Cook,* 62 id. 471; *Richmond* v. *Lee,* 123 App. Div. 279.)

I have been directed to no statute imposing upon the landlord any duty to make such repairs as is imposed under the Tenement House Law. In any event, assuming such an obligation, at most there was a breach, an untenantability resulting therefrom, which could give rise only to a constructive eviction available as a defense when followed by a surrender of the premises, or a claim for damages.

I accordingly direct that a final order be entered herein in favor of the landlord and against the tenant.